## Lundin, Appellant, v. Heilman.

316 

Argued March 26, 1953; reargued October 14, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

 

*John E. Evans, Jr.,* with him *Evans, Ivory & Evans,* and *Maurice L. Kessler,* for appellants.

*Joseph F. Weis,* with him *Joseph F. Weis, Jr.* and *Sherriff, Lindsay, Weis & McGinnis,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, November 24, 1953:

This trespass action was instituted by plaintiffs, husband and wife, to recover damages for injuries sustained by the wife while riding as a passenger in an automobile driven by the defendant. The jury returned a verdict in favor of the defendant. Plaintiffs appealed contending the court below gave an erroneous

instruction to the jury when it affirmed one of the defendant's points for charge, viz.: "the speed of the automobile was not the proximate cause of the accident".

The injuries occurred on the morning of December 29, 1948, at about 1:00 a.m. The wife-plaintiff was requested by defendant to accompany her while, in her automobile, she drove another lady home from a bowling club party. The defendant being unfamiliar with the road had the wife-plaintiff accompany her to show her the way. The wife-plaintiff rode on the front seat with defendant, while the other passenger was seated in the rear.

There was a light rain. As the automobile proceeded along the highway known as Buena Vista-Lovedale Hollow Road, in Elizabeth Township, Allegheny County, it went into a skid, traveled two hundred feet sideways down the road toward the left side of the highway, over a little embankment, through a fence, and into a telegraph pole. There the car turned over on its right side.

The evidence shows that the car skidded slightly (or "swayed a little bit") as it proceeded down Eden Park Boulevard. This was at a point approximately three and one-half miles from the place of the accident. After leaving Eden Park Boulevard the defendant had no difficulty in driving. The route led through the Borough of Versailles, over the Boston Bridge, up the Renzie Hill, up and down Dewey Hill and thence on to the Buena Vista-Lovedale Hollow Road. There is a sign posted at the top of Dewey Hill reading "Slippery When Wet". The Lovedale Hollow Road enters from the right at the bottom of Dewey Hill. Just beyond the intersection the road curves to the left. Although defendant had driven this road many times in the daylight she did not recall having driven on it at

night. This two lane roadway was of asphalt construction and is level at the place the accident occurred. Defendant was driving thirty to thirty-five miles per hour as she approached the intersection, reduced her speed slightly, then after passing.the intersection resumed the same speed. After the defendant's automobile had negotiated the curve the automobile skidded on a patch of ice and the accident resulted.

The court charged the jury that the operator of an automobile must regulate the speed of his motor vehicle commensurate with the circumstances. At the close of the instructions the defendant requested the court to charge that "the speed of the automobile was not the proximate cause of the accident". This point was affirmed. Such a charge was obviously inconsistent and had the effect of a circuitous directed verdict for the defendant: *J. C. Gearing v. L. M. Lacher,* 146 Pa. 397, 23 A. 229; *Williamson v. McCracken,* 330 Pa. 254, 199 A. 166. But in view of the evidence here presented it was harmless error. As there was no proof of negligence, the court below should have granted defendant's motion for binding instructions.

The plaintiffs based their cause of action on the alleged negligence of defendant in operating her car at an excessive rate of speed under the circumstances. The defense was based upon the fact that the defendant's automobile skidded upon an invisible patch of ice upon the highway, of which the driver had no notice and could not reasonably have been expected to discover. It is uncontradicted that the skidding occurred not because of any *slippery condition* of the wet road, but because of the *ice formation* on the road. The record is devoid of any evidence of the presence of ice for three and one-half miles prior to the scene of the accident. Defendant drove up and down a very steep hill and around winding curves without any skidding

of any kind. There was no reason to suspect that the defendant could not proceed with perfect safety at the same moderate speed at which she had theretofore been traveling. Judge BALDRIGE said in *Hatch v. Robinson,* 99 Pa. Superior Ct. 141: ". . . It cannot be said, however, that operating an automobile in the open country at the rate of twenty-five to thirty miles an hour is greater than is reasonable and proper where there is no congested traffic, although there may be an occasional presence of ice or mud . . . ."

Justice DREW (later Chief Justice) stated in *Johnson v. American Reduction Co.,* 305 Pa. 537, 541, 158 A. 153: ". . . The skidding of a vehicle does not of itself establish or constitute negligence. It is encumbent upon the plaintiff to prove the skidding resulted from the negligent act of the defendant; otherwise he is absolved from the consequences: [citing cases]". Plaintiff to establish negligence must prove that defendant has mismanaged his car prior to the skidding: *Simpson et ux. v. Jones,* 284 Pa. 596, 131 A. 541; or that defendant operated his car at an excessive rate of speed, or that defendant's skidding is the result of his carelessness even though there were "patches of ice" along the highway. Mr. Justice JONES has reviewed this area of the negligence field in *Richardson v. Patterson,* 368 Pa. 495, 84 A. 2d 342. See also *Dahlman v. Petrovich,* 307 Pa. 298, 161 A. 550; *Master v. Goldstein's Fruit & Produce, Inc.,* 344 Pa. 1, 23 A. 2d 443; *Miller v. Measmer,* 353 Pa. 18, 44 A. 2d 284.

Plaintiff has failed to show any negligent act of the defendant. At the point where the accident occurred the road was level and there was nothing to give notice of the treacherous icy spot. Two of the occupants of the car, wife-plaintiff and defendant, testified that there was no difference in the appearance of the road at the spot where ice had formed from any

other portion just traveled. The third passenger was not asked if she saw any difference. Clifford A. Halle, the first witness to arrive at the scene of the accident, testified that the surface of the road merely *looked* wet from the rain and that because of the ice there formed he had a hard time "keeping [his] feet". John R. Brennan, a constable in Elizabeth Township, likewise testified that the appearance of the ice, as compared with the wet roads, looked the same. Both Mr. Brennan's car and the ambulance skidded at the scene of the accident. This occurred in spite of the fact that Mr. Brennan was informed of the icy condition.

Plaintiffs have not met the requirement of their affirmative burden of proof of negligence by showing acts of commission or omission from which reasonable minds could infer a violation of any duty owed by defendant to this wife-plaintiff. No reason has been shown to disturb the verdict.

Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The Majority Opinion rules that the affirmance by the lower court of the defendant's point—"The speed of the automobile was not the proximate cause of the accident"—was error. Standing alone, this ruling would entitle the plaintiff to a new trial. The majority, however, states that the plaintiffs were not entitled to a verdict in any event because they failed to prove any negligence on the part of the defendant.

The definition of negligence—want of care under the circumstances—has become so hackneyed, shopworn and monotonous through years of battering and endless quotation that its sententious wisdom is sometimes overlooked, as a simple weather vane can be lost

and ignored when viewed through the maze of complicated charts, instruments and equipment in a meteorological laboratory. Nonetheless, that rudimentary definition of negligence can often be more depended upon accurately to point out the currents and countercurrents of justice in negligence cases than all the involved rules of jurisprudence, citation of authorities and quotations from text books.

Did the defendant Mrs. Jean Heilman exercise care under the circumstances when she allowed her automobile to go into a 200 feet skid, careen over an embankment, crash through a fence, collide with a telegraph pole, and come to the end of its violent journey resting on its side?

Mrs. Heilman knew that the roads were slippery. She skidded at the very beginning of the trip, she passed signs along the road which warned her that the roads were slippery when wet, and she was aware that with rain falling the highway was actually wet.

It has been submitted on behalf of the defendant that the accident was caused by a patch of ice and that there was no way for her to know that ice would appear on the highway. The fact that winter with all its glacial forces had taken over the countryside (it was December 29th) would certainly suggest the possibility that Jack Frost and his sprightly crew might be glazing the roads. In fact, ice had been discovered at a point described as Eden Park Boulevard and Walnut Street (some 3 or 4 miles back from the scene of the accident.) The witness John R. Brennan, called by the defendant, testified to noticing ice on the road "about 100 yards from the upset car." He also testified that the ambulance which called for the injured plaintiff skidded because of ice on the road.

But even if it were to be stipulated that the defendant was not conscious of ice encrusted to the cartway

this would not absolve her from liability; the controlling element of negligence in the case was not the presence or non-presence of ice, but the slipperiness of the road. It could well be that it was the water on the ice which converted the defendant's automobile into a sled, or it could be that the automobile would have skidded even without the presence of ice. The road signs proclaimed that the road would be slippery when wet and there was a plethora of evidence on the general slipperiness of the road. Mrs. Lundin testified: "Q. Did you know what the condition of that road was when it was wet? A. Yes, the road was very slippery." Miss Kathryn Tremont testified: "Q. What is the condition of it when it is wet? A. Well, it is one of those hard surfaces, black surface roads, it is slippery." John R. Brennan testified: "Q. That road was wet on the night of this accident? A. Yes. Q. That road is slippery when wet? A. Yes."

The person who willingly speeds over a known untractionable, slippery road is bound for court or a hospital, or both. The majority opinion contends, however, that the speed of Mrs. Heilman's car is irrelevant to the case, but how can speed be ruled out? Is 35 miles an hour such a snail's pace that it can never be provocative of accident? It is a self-evident observation that, in given circumstances, even 10 miles an hour can be evidence of negligence. (For instance, churning and splashing over a flooded road at 10 miles per hour could easily be causative of tortious incident.)

The touchstone which is determinative of the issue in this case is the simple one: Did the defendant exercise care under the circumstances? Every consideration for prudence dictated the utmost caution and the slowest speed possible. The night was soggy with rain and fog, cloaking the highway with visible and invisible menace. The defendant driver ignored the warnings

which pressed upon her not only through her own senses but through the verbal admonitions of her companions. Mrs. Lundin urged Mrs. Heilman to "take it easy, to take it slow." The defendant herself was conscious of the slippery conditions. She testified: "Q. Do you know whether that blacktop road was slippery when wet? A. I suppose it was ... Q. When you reached Walnut Street was there anything that happened concerning your car? A. Well, we felt it sort of slide, but it wasn't much of a skid. It just *could be from the wet road.*"*

In spite of the insecure traction underwheel, Mrs. Heilman sped down the steep and tortuous Dewey Hill road and entered into a sharp curve at the intersection with the Buena Vista-Lovedale Hollow Road driving at 35 miles per hour. Was this proper care under the circumstances. We have held repeatedly that amid circumstances of this kind only the jury can determine whether the defendant used proper care.

In *Eisenhower v. Hall's Motor Transit Co.,* 351 Pa. 200, this Court said: "Accordingly, what may be a permissible rate of speed at one time and place and under given circumstances may be wholly improper on other occasions and under different circumstances, and in cases where, as here, unusual conditions existed, *it has been uniformly held that the question as to whether the speed was excessive was for the jury* . . ."

It was obvious from the facts, as they unfolded at the trial, that Mrs. Heilman did not have control of her car. In *Knox v. Simmerman,* 301 Pa. 1, 6, we said: "The speed is *excessive whenever it places the car beyond the control of the driver,* and this is especially so when passing an obstruction or rounding a curve."

---

\* Italics throughout, mine.

In *Kotlikoff v. Master,* 345 Pa. 258, 261, 262, where the facts were somewhat similar to those at bar, this Court in affirming a verdict for the plaintiffs, said: *"Other than at this point the highway was free of ice but was wet for miles in both directions* . . . . As an alternative ground for setting aside the verdicts, it is contended that the proximate cause of the accident was not the excessive speed of the Goldstein truck, but the icy condition of the highway, which it is urged constituted an independent intervening agency over which the driver of the truck had no control. We are of the opinion that there is merit in neither of these contentions and that the action of the court below must be sustained."

In *Knoble v. Ritter,* 145 Pa. Superior Ct. 149, 154, the legal point proposed was sufficiently analogous to the one at hand to warrant quotation here: "The contention of defendant is that plaintiffs' injuries and property damage were caused by the intervention of an independent agency over which defendant had no control, to wit, *ice on the highway.* But we think that the evidence was sufficient for the jury to find that skidding of defendant's car resulted from her own negligence, and, the jury having so found, that she was liable for the consequences."

In the light of all the circumstances, was the accident in this case foreseeable? If it was, the defendant cannot avoid liability. Mrs. Lundin is entitled to a determination of that question, but as yet it has not been resolved. By the withdrawal of the question of speed from the jury in the court below, and now by this Court giving life to a dead and buried motion for binding instructions, Mrs. Lundin has in effect been denied her day in court.

I dissent.